This is an appeal from the dismissal of a complaint seeking declaratory relief, money damages for breach of contract, specific performance of the contract, and money damages for misrepresentation.
The following statement of facts is taken from plaintiffs' complaint: Plaintiffs Joseph and Gloria VanLoock and their three minor sons, Scott, Eric, and Ryan, are members of Holy Family Catholic Church in Mobile. In 1983-1984, Scott, Eric, and Ryan were enrolled in Holy Family School in the 6th, 5th, and 1st grades, respectively. The children had attended Holy Family School all of their school lives. All three boys were honor roll students. They completed the 1983-1984 school term in good standing and were promoted to the next grade.
Before the 1983-1984 school term was over, sometime in the spring of 1984, Mr. and Mrs. VanLoock pre-registered their sons for the 1984-1985 school term. The school's registration policy and procedure are discussed in the Holy Family Parent-StudentHandbook.
 "Registration and Fees. Registration is held in the Spring for the following year. Students currently enrolled in Holy Family are given the opportunity to pre-register before other pupils. Forms are sent home with the students who attend Holy Family. Registration is necessary for all pupils desiring to attend Holy Family the following year.
"* * *
 "Registration fee is due by May 15. This fee covers the following expenses:
"Archdiocesan pupil tax
Library materials
Instructional materials (i.e. Scholastic Magazine)
 "No family will be accepted for registration unless tuition is paid up to date."
Although the Parent-Student Handbook states elsewhere that "[t]uition may be paid in ten monthly payments, August through May," the VanLoocks had prepaid their sons' tuition for the remainder of the 1983-1984 school term. The children had no fees or dues of any kind outstanding with the school at the time they pre-registered. Holy Family School accepted the VanLoocks' tender of the children's pre-registration fees and deposited the fees in the school's general account.
On the last day of the 1983-1984 school term, however, the school principal, Sister Rhoda Curran, notified Mrs. VanLoock that the VanLoock children would not be allowed to return to Holy Family School for the 1984-1985 school term. Sister Rhoda returned the children's pre-registration fees and offered no explanation for the school's decision to not enroll Scott, Eric, and Ryan for the new school year.
The Parent-Student Handbook refers to a school grievance policy and states that "[p]arents who feel they have a grievance should contact the school board, pastor, or principal, for a copy of the grievance procedures, within ten (10) school days of the incident." The grievance procedure pamphlet sets out in detail the school's "process for reconciliation of grievances." In accordance with the procedures set forth in the pamphlet, the VanLoocks initiated grievance proceedings. A grievance hearing was held and the grievance board voted three to two to allow the VanLoock children to continue to attend Holy Family *Page 527 
School. Pursuant to the school's grievance procedures, Sister Rhoda appealed the board's ruling to the superintendent of Mobile's Catholic schools. The superintendent overturned the grievance board's decision, and upheld Sister Rhoda's decision to disallow the VanLoock children the right to continue to attend the school.
The VanLoocks initiated the instant lawsuit against Holy Family School, Sister Rhoda Curran, and the Most Reverend Oscar H. Lipscomb, Archbishop of Mobile, a corporation, with the filing of a 49-page, 7-count complaint. Thirty-seven pages of the complaint consisted of exhibits which included copies of the Holy Family Parent-Student Handbook and the Process forReconciliation of Grievances pamphlet. Counts I and II of the complaint requested declaratory relief and specific performance; counts III and IV requested monetary damages for breach of contract; and counts V, VI, and VII requested monetary damages for misrepresentation.
Defendants filed a motion to dismiss the complaint, alleging 39 separate grounds for dismissal. The trial court, without opinion, granted defendants' motion to dismiss. The VanLoocks appeal the dismissal of their lawsuit.
This Court's role in reviewing the propriety of the dismissal is to take "the allegations of the complaint most strongly in favor of the [VanLoocks]," and then, "to determine whether the [VanLoocks] could prove any set of facts in support of [their] claim which would entitle [them] to relief." Jones v. LeeCounty Commission, 394 So.2d 928, 930 (Ala. 1981). Accordingly, we now turn to the complaint to determine if the VanLoocks have stated a claim upon which relief can be granted.
 COUNTS I and II
Counts I and II of the complaint seek a declaratory judgment. The plaintiffs allege the following:
 "Scott VanLoock, Eric VanLoock, and Ryan VanLoock, were arbitrarily, maliciously and capriciously dismissed, expelled and refused the right to return to Holy Family School for the 1984-1985 school term without probable cause and/or without adherence to the due process requirements as established in the defendant, Holy Family School's, publication of rules and regulations which is attached hereto [omitted from this opinion].
"* * *
 "The action, in expelling, and/or refusing to allow the minor plaintiffs, Scott VanLoock, Eric VanLoock, and Ryan VanLoock, to return to Holy Family School for the 1984-1985 school term is illegal and not founded upon any legal right and constitutes a breach of contract for the education of Scott VanLoock, Eric VanLoock and Ryan VanLoock.
 "A genuine dispute exists between the parties as to whether or not a contract between them exists for the education of Scott VanLoock, Eric VanLoock, and Ryan VanLoock; whether or not the defendants breached the contract by expelling and/or refusing to allow the plaintiffs' minor children, Scott VanLoock, Eric VanLoock and Ryan VanLoock, to return to Holy Family School for the 1984-1985 school term, and what, if any, are the duties, rights and responsibilities of the parties under the contract."
Based upon their allegations in Count I, the VanLoocks requested the following relief:
 "a. . . . an Order directing that a contract exists between the parties; and
 "b. . . . an Order confirming the breach of the contract by the Defendants; and,
 "c. . . . an Order finding that the Defendants failed to comply with the procedural due process established by them for the expulsion of students from Holy Family School and that said expulsion, in the instant case, was arbitrary and capricious; and,
 "d. . . . an Order defining the duties, rights and responsibilities of each party to the contract; and,
 "e. . . . an Order ordering the Defendants to allow Scott VanLoock, Eric *Page 528 
VanLoock and Ryan VanLoock to re-enter and attend Holy Family School immediately; and,
 "f. . . . an Order allowing Scott VanLoock, Eric VanLoock and Ryan VanLoock to attend Holy Family School for so long as they comply with the rules and regulations established by said school system without interference, intimidation or threats from the Defendants; and,
 "g. . . . a Judgment for damages in the amount of Fifty Thousand and No/100 ($50,000.00) Dollars, together with interest and costs, . . . in favor of the Plaintiffs and against the Defendants for the unlawful, arbitrary and capricious breach of the actual and/or implied contract and for the arbitrary, malicious and capricious violation of procedural due process established by the Defendants; and,
 "h. . . . an Order granting the Plaintiffs such other, further and different relief to which the Plaintiffs may be entitled . . ., the premises considered."
And, based upon the allegations in Count II, the VanLoocks requested:
 "a. That this Court will enter an Order finding that the Grievance Board received illegal evidence from the Defendant, Sister Rhoda Curran, and, therefore, requiring a rehearing of the grievance filed by the Plaintiffs; and,
 "b. That this Court will enter an Order finding that the Plaintiffs were denied a fair and impartial appeal filed by the Defendant, Sister Rhoda Curran, in that the Superintendent of Schools violated the rules and regulations of the Defendant, Archdiocese of Mobile, in the PROCESS FOR THE RECONCILIATION OF GRIEVANCES when she accepted testimony from the Archdiocese representative who attended the grievance hearing; and,
 "c. That this Court will enter an Order finding that the Plaintiffs were denied a fair and impartial appellate review by the Superintendent of Schools as she was predisposed to rule in favor of the Defendant, Sister Rhoda Curran, having advised the said Defendant that expulsion and/or refusal to allow the VanLoock children to return to Holy Family School for the 1984-1985 school term was an appropriate way to resolve the problem prior to any grievance being filed; and,
 "d. That this Court will enter an Order finding that the Defendants violated procedural due process created by them in the establishment of a grievance procedure under the rules and regulations of the Archdiocese of Mobile as it relates to the PROCESS FOR THE RECONCILIATION OF GRIEVANCES; and,
 "e. That this Court will enter an Order, ordering that the appeal filed by the Defendant, Sister Rhoda Curran, be declared a nullity and order that another Grievance Hearing be held which is fair and impartial; and,
 "f. That this Court will enter an order requiring the Defendant, the Archdiocese of Mobile, to appoint another appellate officer other than the Superintendent of Schools, Gwin Byrd, in the event another appeal of the Grievance Board is taken; and,
 "g. That this Honorable Court will enter an Order granting the Plaintiffs such other, further and different relief to which the Plaintiffs may be entitled to receive, the premises considered."
Thus, the first two counts of the VanLoocks' complaint seek declaratory and other relief based on an alleged breach of contract and denial of due process.
Defendants first argue that the United States Constitution's Fourteenth Amendment's "due process provisions do not apply to actions by a private or parochial institution." Defendants' statement is overly broad, but on these facts, they are correct — the Fourteenth Amendment does not protect the VanLoock children. The general rule is that only state action invokes the procedural due process protections of the Fourteenth Amendment. Rainey v. Ford Motor Credit Co., 294 Ala. 139,313 So.2d 179 (1975). The VanLoocks *Page 529 
have not shown, indeed they have not attempted to show, state involvement in Holy Family School's action in expelling the VanLoock children.
The VanLoocks argue, instead, that they were guaranteed certain due process by the contract that existed between them and the school and that they were not afforded this due process.[1] Indeed,
 "[b]ut for special statutes, such as those governing student records, the rights of private school students and their parents are largely defined by the express and implied terms of their contract with the private school. . . . Where the school adopts certain grievance procedures, such as appeal hearings or arbitration, these will be considered binding upon the school as well as the students." W. Valente, Law in the Schools 468 (1980).
The VanLoocks' request for declaratory relief based on a denial of due process, then, is dependent on their proof of a contract, implied or express, with the school to educate their children for the 1984-1985 school term.[2] Furthermore, even if the VanLoocks prove an express or implied contract of education for the 1984-1985 school term, such a contract may contain terms which are inconsistent with their assertion of the kind or amount of process that is their due. See Wisch v. SanfordSchool, Inc., 420 F. Supp. 1310, 1315 (D.Del. 1976); Greene v.Howard University, 271 F. Supp. 609, 613 (D.D.C. 1967); Annot., 58 A.L.R.2d 903, § 2 (1958).
We proceed with our analysis by asking: Does the VanLoock claim for declaratory judgment contain `even a generalized statement of facts' which supports a claim for breach of contract? Dunson v. Friedlander Realty, 369 So.2d 792, 796
(Ala. 1979). From the Parent-Student Handbook, we gather that Holy Family School required the following as a prerequisite to admission for the 1984-1985 school term: (1) registration in the spring of 1984; (2) payment of a registration fee; and (3) for already-enrolled students, non-delinquent tuition. The VanLoocks timely registered their sons and paid the appropriate registration fees. They were not delinquent in tuition. Without reservation, the school accepted the VanLoocks' registration for the 1984-1985 school term.
The foregoing facts are clearly sufficient as a statement of a contract claim. The VanLoocks have alleged an offer, and an acceptance, with supporting consideration. These facts reasonably support an inference that upon acceptance of the VanLoocks' registration, the school impliedly contracted to educate Scott, Eric, and Ryan for the upcoming school term in exchange for the VanLoocks' payment of pre-registration fees and continued compliance with the school's rules and regulations.
Furthermore, the VanLoock complaint sufficiently alleges a breach of the implied contract. After accepting the VanLoocks' registration, the school principal, Sister Rhoda, informed Mr. and Mrs. VanLoock that their children "will not be registered in Holy Family School for the school year 1984-85," and Sister Rhoda refunded their registration fees. Of course, Holy Family School may suspend or expel a student. The Parent-StudentHandbook provides for suspension or expulsion in the following circumstances:
 "Suspension. Dismissal of a student from school until his parents come to the school for a conference with the principal. Parents will be notified of the suspension and the reason for it. When a student is suspended he receives 0 for the day's work. Some of the reasons for suspension are:
"a. Smoking on the school grounds.
"b. Leaving school grounds without permission. *Page 530 
"c. Destruction of school property.
"d. Injury to others.
 "e. Bringing pornographic material, drugs, or alcoholic beverages to school."
 "Expulsion. The expulsion of a child from a Catholic school is a very serious matter and this measure is to be used only as a last resort and when every other reasonable means of correction has failed. A written report must be made of every case in which a child is dismissed from school and a copy of this report is to be sent to the superintendent."
Yet, the VanLoocks alleged that Scott, Eric, and Ryan were model students and were at all times in complete compliance with the school's academic and conduct requirements. Thus, viewing the complaint's allegations in the light most favorable to the VanLoocks, we are of the opinion that they have sufficiently alleged a breach of the school's contract to educate the children.
We are constrained to hold, therefore, that Count I of the complaint, which requests declaratory and other relief based upon breach of contract, states a claim upon which relief can be granted.
We now turn to Count II which requests declaratory relief based upon denial of due process. As noted earlier, the VanLoocks' due process claim is dependent upon their proof of a contract with the school to educate Scott, Eric, and Ryan for the 1984-1985 school year. In Count I, as we have just explained, the VanLoocks sufficiently allege the existence of a contract of education. The question before us now, then, is: Did that contract afford the VanLoock children any due process protection, and if so, have the VanLoocks sufficiently alleged denial of those protections?
The Parent-Student Handbook stated that "parents who feel they have a grievance should contact the School Board, Pastor, or Principal, for a copy of the grievance procedures." The grievance procedures are set forth in a lengthy pamphlet entitled Process for the Reconciliation of Grievances. Briefly, this process consists of a hearing before a five-person committee overseen by a "neutral" designee of the superintendent who is to "be present at all meetings and . . . offer appropriate advice on the process and on Archdiocesan policy and practice." At the hearing, testimony is taken from both sides. The grievance committee then renders a decision by majority vote. An appeal from the decision of the grievance committee may be taken to the superintendent. The appeal is "on the record only, no further argument or testimony being allowed," and the decision of the superintendent is final. Thus, the school, by contract, does provide its students with certain due process protections.[3]
Furthermore, we are of the opinion that the VanLoocks have sufficiently alleged denial of these due process protections to withstand a motion to dismiss. Count II of the declaratory bill alleges that the superintendent, in contravention of the procedure set forth in the Process for the Reconciliation ofGrievances, considered evidence outside the record in making her decision to uphold Sister Rhoda's expulsion of Scott, Eric, and Ryan. The VanLoocks also allege in Count II that they were denied a fair and impartial appellate review by the superintendent because prior to the VanLoocks' filing their grievance against the school, the superintendent had told Sister Rhoda that she should expel the VanLoock children. Taken as true, the above allegations convince us that there is indeed a "bona fide existing controversy of justiciable character" between the school and the VanLoocks which is proper for resolution by a declaratory judgment. Shadix v. City ofBirmingham, 251 Ala. 610, 611, 38 So.2d 851, 851 (1949). *Page 531 
The appellees make several arguments with respect to Counts I and II of the VanLoock complaint, which we now address. First, appellees argue that Count I does not sufficiently allege a contract because the VanLoocks had not paid their children's tuition for the 1984-1985 school year and the payment of tuition is a prerequisite for registration and admission to Holy Family School. Yet, the Parent-Student Handbook only requires that already-enrolled students be current in the payment of their tuition for the ongoing school year before they will be allowed to register for the upcoming school year. In fact, according to the Parent-Student Handbook, tuition for an ongoing school year may be paid in monthly installments, and is considered delinquent only after the 20th day of the current school month. Thus, the VanLoocks were under no obligation to prepay tuition to insure that their sons were reserved "places" in their respective classes for the 1984-1985 school year. We, therefore, reject appellees' argument to the effect that because the VanLoocks had not paid tuition for the 1984-1985 school term there was no mutuality of obligation and no contract for education.
The appellees also argue that the VanLoocks' request for declaratory judgment presents a moot question because the 1984-1985 school term has passed already. Indeed, moot questions are not properly the subject of declaratory judgment actions. City of Mobile v. Scott, 278 Ala. 388, 178 So.2d 545
(1965). As part of their requested relief, the VanLoocks ask the court to "[e]nter an Order, ordering the Defendants to allow Scott VanLoock, Eric VanLoock and Ryan VanLoock to re-enter and attend Holy Family School immediately." Inasmuch as the 1984-1985 school year has passed, and as the VanLoocks allege no continuing contract on the part of the school to educate the children beyond the 1984-1985 school year, it would seem that this requested relief is due to be denied, even if specific performance were appropriate in this setting. See,e.g., St. Joseph School v. Lamm, 288 Ala. 68, 257 So.2d 318
(1972). However, Alabama's declaratory judgment act provides that "[a] contract may be construed [in a declaratory judgment action] either before or after there has been a breach," Code 1975, § 6-6-224, and the VanLoocks request relief other than specific performance of the contract of education for the 1984-1985 school term. Moreover, "the test of the sufficiency of [a declaratory judgment complaint] is not whether it shows that complainant will succeed in getting a declaration of rights in accordance with his theory and contention, but whether he is entitled to a declaration of rights at all."Moore v. City of Fairhope, 275 Ala. 506, 507, 156 So.2d 366,367-68 (1963). We, therefore, also reject appellees' mootness argument as a basis for dismissal of the action. The VanLoocks have alleged facts sufficient to present a justiciable controversy, and although they may not be entitled to all the relief they request, because of mootness or other reasons, they are entitled to a declaration of their rights.
Finally, defendants argue that the trial court has no jurisdiction to make a declaration of rights based on defendants' administrative decision to expel the VanLoock children because the decision involves a purely spiritual matter. It is true that because of the constitutional guarantees of the establishment and freedom of religion clauses of the First Amendment, the judiciary must gingerly approach church related disputes;[4] but not all church-related disputes are beyond the jurisdiction of the courts. In AbyssiniaMissionary Baptist Church v. Nixon, 340 So.2d 746, 748 (Ala. 1976), this Court stated:
 "[T]here are civil, as opposed to ecclesiastical, rights which have cognizance in the courts. . . . [C]ourts will not assume jurisdiction, in fact [have] none, to resolve disputes regarding [a church's] *Page 532 
spiritual or ecclesiastical affairs. However, there is jurisdiction to resolve questions of civil or property rights."
This Court has recognized jurisdiction over and resolved civil and property church-related disputes in the past. See Harris v.Apostolic Overcoming Holy Church of God, Inc., 457 So.2d 385
(Ala. 1984); Trinity Presbyterian Church of Montgomery v.Tankersley, 374 So.2d 861 (Ala. 1979), cert. denied,445 U.S. 904, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980); AbyssiniaMissionary Baptist Church v. Nixon, supra; Odoms v. Woodall,246 Ala. 427, 20 So.2d 849 (1945). Furthermore, we have done so in a case similar to the instant one involving an alleged breach of contract to educate a parochial student. See St.Joseph School v. Lamm, supra. Other courts, too, have resolved civil contract disputes between parochial religious schools and students. See Bloch v. Hillel Torah North Suburban Day School,100 Ill. App.3d 204, 55 Ill.Dec.651, 426 N.E.2d 976 (1981);Geraci v. St. Xavier High School, 13 Ohio Op.3d 146 (1978). We, therefore, reject defendants' argument that the judiciary has no jurisdiction in this case, where the subject matter of the dispute is a civil breach of contract by virtue of an alleged improper expulsion and denial of due process.
 COUNTS III and IV
Counts III and IV of the VanLoock complaint request monetary damages for breach of contract. Count III alleges:
 "1. On, about or during the school year for Holy Family School, 1983-1984 term, Plaintiffs and Defendants entered into an agreement by which the plaintiffs agreed to pay pre-registration fees for the 1984-1985 school term at Holy Family School to the Defendants and Plaintiffs agreed to abide by the rules and regulations set out by the Defendant, Holy Family School's handbook, . . . and the Defendants promised, upon the payment of the pre-registration fees by the Plaintiffs, and all other fees, and compliance by the Plaintiffs with the conditions of enrollment . . . that the Defendants would enroll and educate the Plaintiffs at Holy Family School. The Plaintiffs paid the pre-registration fees, and all other fees, and have abided by the terms and conditions set out in Exhibit "B" attached hereto [omitted from this opinion].
 "2. Defendants breached the agreement by expelling and/or refusing to allow the Plaintiffs to attend Holy Family School for the 1984-1985 session. Said breach of contract by the Defendants in expelling and/or refusing to allow the Plaintiffs to attend the 1984-1985 session of school at Holy Family School was done maliciously, unfairly, unreasonably or done for some improper motive."
Count IV alleges:
 "3. On, about or during the school term for Holy Family School for 1983-1984, the Plaintiffs paid their pre-registration fees for the school term 1984-1985 and the Plaintiffs and the Defendants entered into an implied agreement by which the Plaintiffs promised to pay and did pay their pre-registration fees for the school term 1984-1985 and agreed to abide by all of the terms and conditions set out in the rules and regulations of Holy Family School, said rules being marked as Exhibit "B", attached hereto and made a part hereof as if fully set out herein [omitted from this opinion], the Defendants impliedly promised that upon the payment of the pre-registration fees and compliance by the Plaintiffs of the rules and regulations of Holy Family School as evidenced by Exhibit "B", that the Plaintiffs would be allowed to enroll and attend Holy Family School for the school term 1984-1985. The defendants breached the implied agreement by maliciously, arbitrarily, capriciously and unfairly expelling the Plaintiffs and/or refusing to allow them to attend Holy Family School for the school term of 1984-1985 after the Plaintiffs had complied with all the terms and conditions required of them by the implied contract between Plaintiffs and the Defendants."
We have already analyzed the sufficiency of the VanLoocks' contract claim based on *Page 533 
the instant facts in our analysis of their request for declaratory relief in Count I. For the same reasons given in that analysis, we are of the opinion that Counts III and IV sufficiently state claims in contract for which relief may be granted.
 COUNTS V, VI, and VII
Counts V, VI, and VII request money damages for civil fraud and misrepresentation. Count V avers:
 "4. On or about the Holy Family School term of 1983-1984, at the Defendants' request, the Plaintiffs paid the required pre-registration fee for the continued enrollment of their children in Holy Family School for the 1984-1985 school term and the Plaintiffs also agreed to abide by the rules and regulations contained in Exhibit "B", attached hereto and made a part hereof as if fully set out herein [omitted from this opinion].
 "5. At that time, the Defendants represented to the Plaintiffs that if they would pay the pre-registration fee for the Holy Family School term 1984-1985 and would agree to comply with all the rules and regulations concerning that school, that the Defendants would provide continued enrollment and education for the Plaintiffs during the 1984-1985 school year. The Defendants maliciously, arbitrarily, capriciously and unfairly refused to allow the Plaintiffs to attend the 1984-1985 Holy Family School term.
 "6. The representations made by the Defendants were false and the Defendants knew that they were false.
 "7. The Plaintiffs believed the representations and in reliance upon them paid their pre-registration fee and agreed to comply with all the rules and regulations set out by the Holy Family School and did comply with said rules and regulations."
Count VI avers:
 "8. On or about the Holy Family School term of 1983-1984, at the Defendants' request, the Plaintiffs paid the required pre-registration fee for the continued enrollment of their children in Holy Family School for the 1984-1985 school term and the Plaintiffs also agreed to abide by the rules and regulations contained in Exhibit "B", attached hereto and made a part hereof as if fully set out herein [omitted from this opinion].
 "9. At that time the Defendants represented to the Plaintiffs that if they would pay the pre-registration fee for the Holy Family School term 1984-1985 and would agree to comply with all the rules and regulations concerning that school, that the Defendants would provide continued enrollment and education for the Plaintiffs during the 1984-1985 school year. The Defendants maliciously, arbitrarily, capriciously and unfairly refused to allow the Plaintiffs to attend the 1984-1985 Holy Family School term.
 "10. The representations made by the Defendants were false and Defendants, without knowledge of the true facts recklessly misrepresented them.
 "11. The Plaintiffs believed the representations and in reliance upon them paid their pre-registration fee and agreed to comply with all the rules and regulations set out by the Holy Family School and did comply with said rules and regulations."
And, Count VII avers:
 "12. On or about the Holy Family School term of 1983-1984, at the Defendants' request, the Plaintiffs paid the required pre-registration fee for the continued enrollment of their children in Holy Family School for the 1984-1985 school term and the Plaintiffs also agreed to abide by the rules and regulations contained in Exhibit "B", attached hereto and made a part hereof as if fully set out herein [omitted from this opinion].
 "13. At that time the Defendants represented to the Plaintiffs that if they would pay the pre-registration fee for the Holy Family School term 1984-1985 and would agree to comply with all the rules and regulations concerning that school, that the Defendants would provide continued enrollment and education for the Plaintiffs during the 1984-1985 school year. The Defendants maliciously, *Page 534 
arbitrarily, capriciously and unfairly refused to allow the Plaintiffs to attend the 1984-1985 Holy Family School term.
 "14. The representations made by the Defendants were false and were made by mistake, but with the intention that the Plaintiffs should rely upon them.
 "15. The Plaintiffs believed the representations and in reliance upon them paid their pre-registration fee and agreed to comply with all the rules and regulations set out by the Holy Family School and did comply with said rules and regulations."
Defendants argue that the VanLoocks have not pleaded the alleged fraud and misrepresentation with sufficient particularity under our Rules. Rule 9 (b), Ala.R.Civ.P., provides that "the circumstances constituting fraud or mistake shall be stated with particularity, but that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." The Committee Comments to Rule 9 (b) state: "[T]his special requirement [of particularity in pleading] as to fraud and mistake does not require every element in such actions to be stated with particularity. It simply commands the pleader to use more than generalized or conclusory statements to set out the fraud complained of. The pleading must show time, place, and contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained."
With the above statements in mind, we cannot say that the VanLoocks have failed to plead their fraud and misrepresentation counts with sufficient particularity. While the pleading is perhaps not a model of clarity and specificity, it sufficiently comports with the purpose of Rule 9 (b) in that it gives the defendants fair notice of the acts complained of.Caron v. Teagle, 345 So.2d 1331, 1333 (Ala. 1977).
In Winn-Dixie Montgomery, Inc. v. Henderson, 353 So.2d 1380
(Ala. 1977), appeal after remand, 371 So.2d 899 (Ala. 1979), this Court held that the plaintiff had sufficiently pleaded fraud to comply with Rule 9 (b)'s particularity requirement. Upon comparison of the pleading in Henderson with the VanLoocks' pleading, we are unable to discern a difference in degree of particularity. We, therefore, find that Counts V, VI, and VII of the instant complaint sufficiently state claims of fraud and misrepresentation upon which relief may be granted.
Because we find that each count of the VanLoock complaint states a claim upon which relief may be granted, we reverse the trial court's dismissal of the complaint and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.
[1] See our discussion of the right to "due process" in another non-state action context in Tucker v. Jefferson County TruckGrowers Ass'n, 487 So.2d 240 (Ala. 1986).
[2] The due process claim cannot rest on the school's contract to educate the VanLoock children for the 1983-1984 school term, because there is no alleged breach of that contract. Scott, Eric, and Ryan attended Holy Family for that entire school term.
[3] Cf. Greene v. Howard University, 271 F. Supp. 609, 613 (D.D.C. 1967) (holding that expelled students had no contractual rights of due process where private school's catalog contained provision that "University reserves the right, and the student concedes to the University the right, to deny admission to and require withdrawal of any student at any time for any reason sufficient to University").
[4] "In view of the doctrine of the separation of church and state, and the guarantees of religious freedom, the courts are reluctant to adjudicate matters affecting religious societies." 76 C.J.S. Religious Societies § 86 (1952).