Beverly **CHRISTENSEN**, as guardian and next friend of Jessica Hatcher, et al., Plaintiffs,

v.

**SOUTHERN NORMAL SCHOOL,**
et al., Defendants.

No. CIV. A. 97–D–181–N.

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 7, 2000.

Abner A. Powell, Andalusia, AL, for Plaintiff.

Ronald G. Davenport, Robert C. Ward, Jr., Jack B. Hinton, Jr., Montgomery, AL, for Defendant.

## MEMORANDUM OPINION
## AND ORDER

DE MENT, District Judge.

Before the court is a Motion For Summary Judgment ("Def.s' Mot.") along with a Brief In Support thereof ("Def.s' Br."), filed by Defendants Southern Normal School, Southern Normal School Foundation, Inc., Donald V. Watkins and Frederick Burks (herein referred to collectively as "Defendants") on February 26, 1999. On March 15, 1999, Plaintiffs filed their Response To Defendants' Motion For Summary Judgment ("Pl.s' Resp. To Def.s' Mot."). Defendants filed their Reply ("Def.s' Reply") on March 22, 1999. On June 3, 1999, Defendants filed a Supplemental Brief In Support Of Motion For Summary Judgment ("Def.'s Suppl. Br."). On June 11, 1999, Defendants filed a Supplement To Their Motion For Summary Judgment ("Def.s' Suppl. Mot."). Plaintiffs filed a Response To Defendants' Supplemental Filings ("Pl.s' Suppl. Resp.") on June 17, 1999.

Also before the court is Defendant Sherman Jones' ("Def. Jones") Motion For Summary Judgment ("Def. Jones' Mot.") along with a Brief In Support thereof ("Def. Jones' Br."), filed February 26, 1999. On March 15, 1999, Plaintiffs filed their Response To Defendant Jones' Motion For Summary Judgment ("Pl.s' Resp. To Def. Jones' Mot."). Defendant Jones filed his Reply ("Def. Jones' Reply") on March 22, 1999. On June 3, 1999, Defendant Jones filed an Amended Motion For Summary Judgment ("Def. Jones' Am. Mot."). Plaintiffs filed a Response To Defendant Jones' Amended Motion ("Pl.s' Resp. To Def. Jones' Am. Mot.") on June 17, 1999.

Finally, before the court is Plaintiffs' Motion For Summary Judgment ("Pl.s' Mot.") along with a Brief In Support thereof ("Pl.s' Br."), filed February 26, 1999. On March 15, 1999, Defendants, including Defendant Jones, filed Responses To Plaintiffs' Motion For Summary Judgment. Plaintiffs filed corresponding Replies on March 22, 1999. On June 18, 1999, Plaintiffs filed a Supplement To Their Motion For Summary Judgment ("Pl.s' Suppl. Mot."). Defendants, including Defendant Jones, subsequently filed Responses To Plaintiffs' Supplemental Motion For Summary Judgment.

The court concurrently addresses the aforementioned Motions For Summary Judgment herein. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motion is due to be granted in part, Defendant Jones' Motion is due to be granted in part, and Plaintiffs' Motion is due to be denied in part. Further, the court finds that determinative state law issues of first impression exist in this action. Therefore, certification of these issues to the Supreme Court of Alabama is appropriate pursuant to Section 6.01(b)(3) of the Constitution of Alabama of 1901, as amended, and Rule 18 of the Alabama Rules of Appellate Procedure.

## I. JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a). The Parties do not contest personal jurisdiction or venue.

## II. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and

upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed. R. Civ. P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed. R. Civ. P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go

beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed. R. Civ. P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

### III. FACTUAL BACKGROUND

On January 21, 2000, the Parties filed the following Joint Stipulation Of Facts ("Jt. Stip."):

These consolidated lawsuits arise out of the minor [P]laintiffs' enrollment during the school years of 1993–94, 1994–95 and 1995–1996, at Southern Normal School (hereinafter [sometimes referred to] as "SNS"), a predominantly minority co-educational boarding school formerly located in Brewton, Alabama. There exists complete diversity of citizenship between all [P]laintiffs and all [D]efendants for jurisdictional purposes. Southern Normal School was founded in 1911. In 1919, it became a mission of the Reformed Church in America, from which the school received virtually all of its financial support from 1919 through 1992. In November of 1992, Southern Normal School became independent of the Reformed Church in America. The Board of Trustees for the school incorporated as the Southern Normal School Foundation, Inc. in November of 1992.

Southern Normal School Foundation, Inc. obtained its 501(c)(3) non-profit designation from the Internal Revenue Service in July of 1993. Southern Normal School had been accredited by the Southern Association of Colleges and Schools since 1938 and was accredited at all times relevant to the [P]laintiffs' [C]omplaint. SNS followed the standards published by the Southern Associations of Colleges and Schools, which was the accrediting body.

The SNS Board approved all major policy decisions of the school and provided overall direction of the school's operations. Defendant Frederick Burks served as the Chairman of the Board of Trustees from Spring of 1992 to May of 1995. Defendant Donald Watkins served as the Chairman of the Board of Trustees from May, 1995 to the summer of 1996.

The President of the Foundation and Headmaster of Southern Normal School from 1993 through 1996 was Dr. Sherman Jones. Dr. Jones was appointed by the Board of Trustees and was responsible for managing the day-to-day operations of the school. All school employees were responsible to Dr. Jones in carrying out their duties. The non-profit corporation known as Southern Normal School Foundation, Inc. ceased operations at the end of 1996.

Dr. Jones became president of Southern Normal School Foundation, Inc. and Headmaster of Southern Normal High School beginning August 1, 1993. (Exhibit 1 of Dr. Jones' dep. at 21.) Dr. Jones' tenure with the school pursuant to his contract was intended to last no less than five years ending July 31, 1998. However, Dr. Jones' association and/or affiliation with the school ceased no later than August 13, 1996.

Southern Normal School published brochures, school catalogues and student handbooks that described the mission and purpose of the school, the general nature of security and supervision provided to the students, medical facilities available to the students, the financial obligations of parents enrolling their children at the school, the curriculum offered by the school, the students' daily schedule, and the school's rules of student conduct. Each parent or guardian was provided with a variety of these documents, including a student handbook and a catalogue, prior to enrolling their children at Southern Normal School. Southern Normal's "enrollment contract" set out the parents' obligation to pay the students' tuition and expenses for one full school year's enrollment at Southern Normal School. This contract stated that there would be no refund for any tuition, room, board or fees for withdrawals or dismissals for disciplinary reasons. The contract contained no other terms regarding SNS' obligations to the [P]laintiffs. This document is the only written contract entered into between Southern Normal School and the [P]laintiffs.

Each of the student [P]laintiffs completed an application for admission to Southern Normal and subsequently enrolled at SNS. None of the student [P]laintiffs graduated from Southern Normal School.

Plaintiffs filed their original [C]omplaint on February 18, 1997. The [C]omplaint, as amended, is comprised of several counts including allegations of breach of contract, fraudulent misrepresentation, fraudulent suppression, fraudulent inducement or promissory fraud, "educational fraud" under Ala.Code § 16–46–4, and negligence against the Defendants.

The [P]laintiffs' [C]omplaint, as amended, claims monetary damages for tuition and expenses as well as emotional distress and mental anguish arising from SNS' failure to provide various aspects of boarding school life according to its alleged contract with each [P]laintiff. The [P]laintiffs have also alleged that the Defendants intentionally and/or recklessly made fraudulent misrepresentations to [P]laintiffs upon which they

relied to their detriment, and which induced them to enroll at Southern Normal School. Plaintiffs also claim that the Defendants owed a legal duty to [P]laintiffs to disclose certain material facts, that they failed to do so and that [P]laintiffs suffered damages as a result. Plaintiffs claim compensatory and punitive damages for their allegations of fraud.

Plaintiffs again amended their [C]omplaint to include counts of negligence against all [D]efendants. Plaintiffs specifically claim that from August of 1993 through May of 1996, [D]efendants undertook a duty to the minor [P]laintiffs to provide a safe, secure living and education environment, supervision in dorms, a guard at the front gate, rigorous college preparatory curriculum, access to extracurricular activities, access to medical facilities, and programs to facilitate a disciplined and religious environment amount students. Plaintiffs further claim that [D]efendants "negligently failed to provide reasonable programs, curricular, supervision, extracurricular activities, medical attention and treatment", etc. The [C]omplaint also states that [P]laintiffs suffered injuries "associated with [D]efendants' failure to provide the quality of education, quality of environment, level of safety, medical attention, services, education attention, and programs promised in the application contract."

(Jt.Stip.1–4.)

Also on January 21, 2000, Plaintiffs filed a Joint Diagram articulating their specific claims alleged and damages requested, along with citations to the record for all arguments and evidence in support of each claim alleged by each Plaintiff ("Pls' Jt. Diag."). On the same day, Defendants filed a Joint Diagram which contains specific citations to the record for each defense raised as to every claim asserted by Plaintiffs ("Def.s' Jt. Diag."). Defendant Jones also filed a similar Joint Diagram ("Def. Jones' Jt. Diag.") on January 21, 2000. The court employs these Joint Diagrams in addressing the instant Motions For Summary Judgment herein.

## IV. DISCUSSION [1]

As set forth above, Plaintiffs bring the following claims against all Defendants, including Defendant Jones (herein referred to collectively as "Defendants"): (1) Breach of Contract (Count One); (2) Educational Fraud under Alabama Code § 16–46–4(1) (Count Two); (3) Educational Fraud under Alabama Code § 16–46–4(3) (Count Three); (4) Fraudulent Misrepresentation (Count Four); (5) Fraudulent Suppression (Count Five); and (6) Negligence (Count Six). (March 25, 1999 Am. Compl.) The court will address Counts Two and Three together in Section V below and then address Counts One, Four, Five, and Six concurrently in Section VI.

## V. EDUCATIONAL FRAUD

Plaintiffs contend that Defendants are liable for Educational Fraud under Alabama Code § 16–46–4. (March 25, 1999 Am. Compl. ¶¶ 24–34.) However, for the reasons to follow, the court finds that Defendants are exempt from liability under § 16–46–4, pursuant to the exemption provision contained in Alabama Code § 16–46–3. This exemption clause provides that the Educational Fraud statutes shall not apply to

schools nor to any person in regard to the operation of such schools ... offering instruction in grades K–12, including the kindergarten, elementary, or secondary level, and operated by a community, educational organization, or group of parents, organized as a nonprofit educational corporation with the expectation

---

**1.** When federal district courts sit in diversity, they must apply the substantive law of the forum state. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Moreover, all Parties to the case sub judice agree that Alabama law applies in this action. Therefore, the court will apply Alabama substantive law in addressing the instant Motions.

of establishing a more favorable environment for those in attendance.

ALA CODE § 16–46–3(a)(4) (1995 Supp.).

It is undisputed that SNS offered instruction in grades 7–12, which is considered secondary level education. *See* ALA CODE § 16–23–16.1(a) (1995 Supp.). Plaintiffs, however, argue that because SNS did not offer instruction in all grades from K–12, the § 16–46–3(4) exemption is not applicable in this case. (Pl.s' Resp. To Def.s' Mot. at 21.) The court does not agree. A plain language interpretation [2] of § 16–46–3(4) reveals that this statute provides an exemption to schools that offer instruction at the "kindergarten, elementary, *or* secondary level[s]," not just to schools where K–12 instruction is offered. ALA CODE § 16–46–3(a)(4) (1995 Supp.) (emphasis added). Accordingly, the court finds that Plaintiffs' argument is without merit.

■ Next, it is undisputed that SNS was operated by a nonprofit educational corporation. (Jt. Stip. at 1; Def.s' Reply at 18.) Further, it is undisputed that the stated purpose of SNS was as follows:

> To provide a superior college preparatory educational experience for its students, particularly African–American and black students from the major urban areas of this and other countries. The goal was to prepare these students for roles of service and leadership in their respective countries. A goal of the school was also to provide educational opportunities for youths of ability from the greater Brewton community and Alabama's smaller towns.

(Def.s' Ex. B at 2–3.) However, Plaintiffs contend that Defendants "did not possess the expectation of establishing a [more] favorable environment" for students attending SNS, and therefore, the exemption provision of § 16–46–3(4) should not apply. (Pl.s' Resp. To Def.'s Mot. at 21) (quoting ALA CODE § 16–46–3(a)(4) (1995 Supp.)). While Plaintiffs allude to their fraudulent misrepresentation claims in support of this contention, they offer no specific evidence that Defendants lacked the requisite "expectation of establishing a more favorable environment" for those attending SNS. ALA CODE § 16–46–3(a)(4) (1995 Supp.). Indeed, Plaintiffs merely rely on their own conclusory statements in hopes of defeating the exemption provision contained in § 16–46–3(4). (Pl.s' Resp. To Def.'s Mot. at 21–22.) However, such evidence, or lack thereof, is not sufficient to show a genuine issue of material fact. *See United Steelworkers of Am., AFL—CIO v. Univ. of Ala.,* 599 F.2d 56, 61 (5th Cir.1979); [3] *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that the nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial' "). Furthermore, as Defendants correctly assert, § 16–46–3(4) does not require that a school succeed in providing a more favorable environment to its students, but only that those operating the school have that expectation. *See* ALA CODE § 16–46–3(a)(4) (1995 Supp.). Based on the foregoing, the court is satisfied that Defendants have met this rather lenient requirement and that Plaintiffs have failed to demonstrate otherwise.

Accordingly, the court finds that SNS falls within the exemption provision of § 16–46–3(a)(4) and, thus, Defendants are

**2.** "When construing a state statute, [a federal court] look[s] to state rules of statutory construction, because the same rules apply in federal court as would apply in a state court." *Municipal Util. Bd. of Albertville v. Alabama Power Co.,* 21 F.3d 384, 387 (11th Cir.1994). Alabama law mandates that "where plain [statutory] language is used, the court is bound to interpret that language to mean exactly what it says." *Ex parte State Dep't of*

*Revenue,* 683 So.2d 980, 983 (Ala.1996). Accordingly, the court applies a plain language interpretation to § 16–46–3(a)(4) in deciding this matter.

**3.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981)(en banc).

exempt from Plaintiffs' claims of Educational Fraud.[4] Accordingly, summary judgment is due to be granted in favor of Defendants as to Plaintiffs' claims for Educational Fraud.

## VI. BREACH OF CONTRACT, FRAUD, AND NEGLIGENCE

Plaintiffs premise their breach of contract,[5] fraud, and negligence claims on the argument that Defendants failed to provide Plaintiffs with the quality education and safe, nurturing environment promised in Defendants' recruiting materials. (Pl.s' Br. at 5.) In support of this argument, Plaintiffs set forth numerous allegations showing their extreme dissatisfaction with the experience they each had while attending SNS. (*Id.* at 2–5.) For instance, Plaintiffs allege that one student was sexually assaulted on campus and that others were deprived of food as a means of punishment. (Pl.s' Resp. To Def.s' Suppl. Mot. at 5.) Moreover, Plaintiffs contend that SNS did not provide its students the "quality of education" or "quality of environment" that was promised them. (Jt. Stip. at 4.) In short, Plaintiffs allege that a multitude of egregious acts occurred during their time at SNS and these acts represent Plaintiffs' damages stemming directly from Defendants' breach of contract, fraud, and negligence.

On the other hand, Defendants argue, inter alia,[6] that Plaintiffs' claims should be dismissed as a matter of law because these claims represent an attempt to state a cause of action for educational malpractice, which is not recognized under Alabama law. (Def.s' Jt. Diag.) In support of this argument, Defendants cite to the case of *Blane v. Alabama Commercial College*, which is the only Alabama case that ad-

dresses educational malpractice. 585 So.2d 866, 868 (Ala.1991). In *Blane*, the Supreme Court of Alabama specifically rejected "educational malpractice" as a valid cause of action, stating only that "we find no case establishing such a cause of action." However, unlike Plaintiffs in the instant case, the plaintiff in *Blane* explicitly raised an "educational malpractice" claim. *Id.* Therefore, the *Blane* Court did not analyze what constitutes an educational malpractice claim, but simply refused to recognize such a claim when explicitly pled. In other words, while the *Blane* opinion articulates the principle that a cause of action for educational malpractice is not recognized under Alabama law, it does not delineate the parameters of educational malpractice in a way that would allow this court to determine the validity of Defendants' aforementioned argument.

Therefore, based on the foregoing, the court finds that determinative questions exist in this action regarding educational malpractice. Specifically, the questions are as follows: What is the standard to apply in determining whether a plaintiff is seeking to circumvent the principle that there is no cognizable cause of action for educational malpractice in Alabama? Alternatively, do Plaintiffs' breach of contract, fraud, and negligence claims raised in the instant action represent an improper attempt to circumvent the principle that there is no cognizable cause of action for educational malpractice in Alabama? Because the court finds that these questions of state law are ones of first impression, certification to the Supreme Court of Alabama is appropriate. Accordingly, pursuant to Section 6.01(b)(3) of the Constitution of Alabama 1901, as amended, and Rule 18

---

4. In the alternative, the court finds that SNS also falls within the exemption provision of § 16–46–3(a)(7) and, thus, Defendants, including Defendant Jones, are exempt from Plaintiffs' claims of Educational Fraud.

5. Plaintiffs' breach of contract claims are based on theories of implied contract. (Pl.s' Mot. at 11.)

6. Although Defendants raise additional arguments in support of their Motions For Summary Judgment, the court finds that these additional arguments may be moot depending on the answers provided by the Alabama Supreme Court to the questions certified herein. Therefore, the court will not address these additional arguments until resolution of the questions herein certified to the Alabama Supreme Court.

of the Alabama Rules of Appellate Procedure, the court requests that the Supreme Court of Alabama answer the aforementioned questions concerning educational malpractice.

**CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION, TO THE SUPREME COURT OF ALABAMA, PURSUANT TO SECTION 6.01(b)(3) OF THE CONSTITUTION AND RULE 18 OF THE ALABAMA RULES OF APPELLATE PROCEDURE.**

**TO THE SUPREME COURT OF THE STATE OF ALABAMA AND THE HONORABLE JUSTICES THEREOF:**

A. *Style of the Case*

In the District Court of the United States for the Middle District of Alabama, Northern Division: *Beverly Christensen, et al., Plaintiffs v. Southern Normal School, et al., Defendants*, Civil Action No. 97–D–181–N.

B. *Background*

The undisputed facts and background are set forth in Section III *et seq.* of this Memorandum Opinion And Order. To briefly summarize, Plaintiffs contend that Defendants, including Defendant Jones (herein referred to collectively as "Defendants"), are liable for breach of contract, fraud, and negligence because these Defendants failed to provide the quality education and safe, nurturing environment promised in Defendants' recruiting materials. Plaintiffs list a number of egregious incidents that allegedly occurred during their time at Southern Normal School ("SNS") and claim that these incidents were the direct result of Defendants' breach of contract, fraud, and negligence.

In response, Defendants assert that Plaintiffs' claims for breach of contract, fraud, and negligence should be dismissed as a matter of law because they constitute an attempt to state a cause of action for educational malpractice, which is a cause of action that the Supreme Court of Alabama specifically rejected in *Blane v. Alabama Commercial College*, 585 So.2d 866, 868 (Ala.1991). However, as discussed earlier, the *Blane* case is not directly on point to the case at bar. Therefore, because *Blane* is the only Alabama case that has broached the subject of educational malpractice, the determinative questions raised in the instant action are ones of first impression under Alabama law.

Plaintiffs counter by arguing that their breach of contract, fraud, and negligence claims are cognizable causes of action under Alabama law and "not thinly veiled attempts at pleading 'educational malpractice.' " (Pl.s' Resp. To Def.s' Mot. at 6.) In support of their argument, Plaintiffs cite the following cases: *VanLoock v. Curran*, 489 So.2d 525 (Ala.1986) (reversing lower court's dismissal of breach of contract and fraud claims against school because school had promised to educate students, but then, without explanation, disallowed students the right to continue attending the school); *Phillips Colleges of Alabama, Inc. v. Lester*, 622 So.2d 308 (Ala.1983) (recognizing as valid a fraud claim asserted against school that had promised to provide plaintiff a specific number of hours of practical training and then failed to do so); and. *Craig v. Forest Institute of Professional Psychology*, 713 So.2d 967 (Ala.Civ. App.1997) (holding that students could properly assert breach of contract and fraud claims against a school that had completely failed to provide the specific educational services promised to students).

However, contrary to Plaintiffs' argument, these cases are not directly "on point." (Pl.s' Resp. To Def.s' Mot. at 6.) The primary distinction lies in the fact that the aforementioned cases involved specific promises and specific breaches thereof, whereas the instant case involves promises and alleged breaches which are much more vague and general in nature. For instance, the *VanLoock* case involved a parochial school that accepted the plaintiffs' registration for the next school term, but

subsequently, and for no valid reason, disallowed them the right to continue attending the school. 489 So.2d at 526–527. The *VanLoock* court held that, because the school completely refused to educate plaintiffs after promising to do so, plaintiffs could properly assert breach of contract and fraud claims against the school. *Id.* at 529–534. In contrast, the instant case involves vague promises and alleged breaches thereof, such as Plaintiffs' allegation that Defendants failed to provide the superior college preparatory education advertised in their recruiting materials. Unlike the plaintiffs in *VanLoock,* Plaintiffs here do not claim that they were completely denied an education, but rather, they challenge the quality of the educational services they received. Such challenges have not been addressed by the Courts of Alabama, and, therefore, the court finds Plaintiffs' argument to the contrary to be unavailing.

On the other hand, Defendants correctly assert that the majority rule in other jurisdictions provides that students may bring tort and/or contract actions against an educational institution *only* if "it is alleged that the institution failed to perform on specific promises it made to the student and the claim 'would not involve an inquiry into the nuances of educational processes and theories.'" *Alsides v. Brown Institute, Ltd.,* 592 N.W.2d 468, 473 (Minn.Ct. App.1999) (quoting *Ryan v. University of N.C. Hosps.,* 128 N.C.App. 300, 494 S.E.2d 789, 791 (1998)); *see also Tankoos v. The Mead School For Human Dev.,* No. X05CV 950145853S, 1999 WL 391350, at *3 (Conn.Super.Ct. June 4, 1999) ("[C]ourts have almost universally held that claims of 'educational malpractice' are not cognizable."); *see generally Houston v. Mile High Adventist Academy,* 872 F.Supp. 829 (D.Colo.1994); *Cavaliere v. Duff's Business Inst.,* 413 Pa.Super. 357, 605 A.2d 397 (1992); *Paladino v. Adelphi Univ.,* 89 A.D.2d 85, 454 N.Y.S.2d 868 (1982); Claudia G. Catalano, Annotation, *Liability of Private School or Educational Institution for Breach of Contract Arising from Provision of Deficient Educational Instruc-*

*tion,* 46 A.L.R.5th 581 (1997). In other words, the vast majority of courts have rejected claims attacking the general quality of education services provided to students. *See Ross v. Creighton Univ.,* 957 F.2d 410, 414 (7th Cir.1992). Such claims are known as educational malpractice claims and are not looked upon with favor because of various public-policy reasons, including:

> (1) the lack of a satisfactory standard of care by which to evaluate an educator; (2) the inherent uncertainties about causation and the nature of damages in light of such intervening factors as student's attitude, motivation, temperament, past experience, and home environment; (3) the potential for a flood of litigation against schools; and (4) the possibility that such claims will 'embroil the courts into overseeing the day-to-day operations of schools.'

*Alsides,* 592 N.W.2d at 472 (quoting *Ross,* 957 F.2d at 414).

Defendants argue that Plaintiffs' claims are, in substance, claims for educational malpractice and should be dismissed pursuant to the majority standards set forth above. However, Alabama Courts have yet to adopt these standards or articulate other standards to apply in determining questions of educational malpractice. Therefore, based on the foregoing, the court finds that Defendants' argument gives rise to the following issues of first impression under Alabama law: *What is the standard to apply in determining whether a plaintiff is seeking to circumvent the principle that there is no cognizable cause of action for educational malpractice in Alabama? Alternatively, do Plaintiffs' breach of contract, fraud, and negligence claims raised in the instant action represent an improper attempt to circumvent the principle that there is no cognizable cause of action for educational malpractice in Alabama?* Accordingly, the court requests that the Honorable Justices of the Supreme Court of Alabama examine and decide these legal questions.

## C. *Questions to be Certified to Supreme Court of Alabama*

Pursuant to Section 6.01(b)(3) of the Constitution of Alabama 1901 and Rule 18 of the Alabama Rules of Appellate Procedure, the following questions are hereby certified to the Supreme Court of Alabama:

WHAT IS THE STANDARD TO APPLY IN DETERMINING WHETHER A PLAINTIFF IS SEEKING TO CIRCUMVENT THE PRINCIPLE THAT THERE IS NO COGNIZABLE CAUSE OF ACTION FOR EDUCATIONAL MALPRACTICE IN ALABAMA? ALTERNATIVELY, DO PLAINTIFFS' BREACH OF CONTRACT, FRAUD, AND NEGLIGENCE CLAIMS RAISED IN THE INSTANT ACTION REPRESENT AN IMPROPER ATTEMPT TO CIRCUMVENT THE PRINCIPLE THAT THERE IS NO COGNIZABLE CAUSE OF ACTION FOR EDUCATIONAL MALPRACTICE IN ALABAMA?

The phrasing of the questions is not intended to limit the inquiry of the Supreme Court of Alabama. In answering the certified questions, the Supreme Court is at liberty to consider the problems and issues involved in this case as it perceives them. In order to assist the Supreme Court, the court transmits the entire record in this case.

**QUESTIONS CERTIFIED.**